No. 25,001.

MABEL M. COMBS and MILDRED BRUBAKER, *Appellants*, v. NETTIE TRENT, KATIE SARTIN, and OLIVER W. MUSSEY, *Appellees*.

### SYLLABUS BY THE COURT.

1. PARTITION—*Oral Contract Between Father and Son—Son to Manage Farm and Care for His Parents During Life—Son to Have Farm at Parents' Death—Performance by Son.* A judgment determining the existence and validity of an oral contract between a father and his son that if the son would remain at home, manage the farm and care for his parents until their death, he would become entitled to the farm and that there had been compliance with the conditions of the contract, is held to have been sustained by sufficient evidence.

2. SAME — *Effect of a Disclaimer in the Land by One Having an Interest Therein.* Where the son with whom the contract was made alleged and claimed in his cross petition the entire farm, and one of the adverse parties having an interest in it filed a disclaimer, alleging that she concurred in the allegations of the cross petitioner and disclaimed any interest in the real estate involved, the cross petitioner was entitled to judgment for any interest in the farm held by the disclaiming party.

Appeal from Pottawatomie district court; ROBERT C. HEIZER, judge. Opinion filed February 9, 1924. Modified and affirmed.

*W. F. Challis,* and *William E. Smith,* both of Wamego, for the appellants.

*Charles Hughes,* of Manhattan, *James V. Humphrey,* and *Arthur S. Humphrey,* both of Junction City, for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.: This is an action to determine the interests of the children of A. U. Mussey, in a tract of land and for the partition of the same among the parties. Oliver W. Mussey, the only son of the deceased, claimed the entire interest in the tract, alleging that his father had entered into a contract with him twenty-four years before that if he would remain upon the farm, manage and conduct it, that he should have the real estate at the death of the father and mother. The mother died in June, 1905, and the father died intestate on October 25, 1919. The court found the contract pleaded had been made and had been fully performed, but found that the mother of the parties owned a one-third interest in the land and that her interest was not covered by the contract under which Oliver Mussey claimed and therefore found that Oliver was only entitled under his

contract to an undivided two-thirds interest in the tract. It appears that one of the defendants, Katie Sartin, filed a disclaimer, in which she stated that she disclaimed any interest in the property involved in the action, and the appellants contend that the disclaimer operated to vest Mrs. Sartin's interest in all of the other parties to the suit in equal shares just as though Mrs. Sartin had never been born and the four children, other than Katie Sartin, inherited the interest of Mrs. Mussey, instead of five. On this branch of the case the appellees appeal and insist that the disclaimer of Mrs. Sartin confessed the claims of Oliver W. Mussey, and that he is entitled to recover the disclaimed interest. His contention is that if all had disclaimed as Mrs. Sartin did, he would have been entitled to judgment on the pleadings as against all and as with all so with a part.

As to the contract with Oliver it appears that the family of M. U. Mussey consisted of one son, and five daughters. His wife was an invalid, and his daughter Pearl was also in ill health. The latter died in 1900, while her mother lived five years longer. About twenty-four years ago the son, Oliver, contemplated leaving home and entering upon a career of his own. The father then remarked that Oliver was his only son, that he had to depend on him, that he had two sick women on his hands, and both he and his wife wanted Oliver to stay with them and if he did so he should have the farm when they carried him up on the hill. Aaron Sartin, the husband of the daughter Katie, testified about a family conference in which he participated in 1897, when the father and mother and Oliver were present with him. At that time they discussed the question of inducing Oliver to remain at home. The father then said that he had an understanding with Oliver that he was to stay with him and take care of the place and then it should be his. Katie testified about a conversation in which the father said in the presence of her mother and her sisters, "Yes, I have an agreement with him to stay with us until mother and I are dead. He shall have the place. We struck hands on the bargain." At another time she testified of a conversation with her mother who said: " 'Father has finally fixed it with the boy.' She said, 'I think it is all right.' I said, 'How is it fixed?' She said, 'They had an agreement.' " A number of other witnesses testified that the father had made similar remarks to them. When a census officer came to the place and asked questions as to

the family and the property, Mr. Mussey told her that the farm belonged to Oliver. There was an abundance of testimony tending to show the existence of the contract that Oliver had faithfully performed his part of it for a period of twenty-four years, and we think that on the evidence the court was warranted in finding the existence and validity of the contract and that there had been full compliance with its conditions.

There was a stipulation of the parties that their mother owned a one-third interest in the farm and for reasons not apparent it was decided that this share was not covered by the contract. No question is raised as to this holding but Oliver has appealed from the decision as to the rights of the parties in the mother's interest in the farm. The trial court held that when the mother died her interest descended one-half of it to the father and the remaining half to the five children in equal shares and that when the father died the interest inherited by him descended in equal shares to his five children. In the judgment, however, it was decreed that each of the daughters, other than Katie, be given the one-twelfth interest in the farm and Oliver a nine-twelfth interest, thus dividing Katie's inheritance among all of the other parties. The disclaimer of Katie did not add anything to the inheritance of her sisters. By operation of law the mother's interest finally descended in equal parts to the five children entitling each to a one-fifteenth interest. Katie had not transferred the share which descended to her to her sisters nor had they otherwise acquired any part of that share. Oliver in his cross petition had asked for the entire farm. Katie concurred in the claims of Oliver and disclaimed any interest in the land so claimed by Oliver, or in any property involved in the action. She practically confessed the allegations of Oliver, and as between them there was nothing to try. If all the others had disclaimed, Oliver would have been entitled to a judgment on the pleadings against all. (*Kansas Pacific Rly. Co. v. McBratney*, 10, Kan. 415; *Wade v. Gilmer*, 186 Ala. 524.) Under Katie's disclaimer Oliver was entitled to judgment against her for whatever interest she had in the land within the averments of his cross petition, but her disclaimer did not enhance the inheritance of her sisters. Mabel, Mildred and Nettie were each entitled to a one-fifteenth interest and Oliver was entitled to a judgment for the remaining portion of the land. The judgment must therefore be modified in this respect, and when so modified is affirmed.